*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADAM A. HOLLAND, individually and on behalf of those similarly situated,

Plaintiff-Appellant,

v

DEWITT PUBLIC SCHOOL DISTRICT, DEWITT PUBLIC SCHOOLS BOARD OF EDUCATION, and DEWITT PUBLIC SCHOOLS SUPERINTENDENT,

Defendants-Appellees.

UNPUBLISHED
January 26, 2023

No. 360706
Clinton Circuit Court
LC No. 2021-012099-CZ

Before: PATEL, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

In this action involving plaintiff's complaints about the adoption of a mask policy by defendants in light of the COVID-19 (COVID) pandemic, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants DeWitt Public School District, DeWitt Public Schools Board of Education (School Board), and DeWitt Public Schools Superintendent. For the reasons set forth in this opinion, we affirm.

Plaintiff initiated this lawsuit as a purported class action suit challenging the pandemic-related mask policy implemented at the beginning of the 2021-2022 school year in the DeWitt Public School District, where plaintiff's children attend school. Plaintiff, an attorney, acted as both the named plaintiff and plaintiffs' counsel. Plaintiff claimed that the mask policy had been unlawfully implemented by order of the Superintendent without adoption and approval by the School Board.[1]

---

[1] We review a trial court's summary disposition ruling de novo. *Citizens For A Better Algonac Community Sch v Algonac Community Sch*, 317 Mich App 171, 176; 894 NW2d 645 (2016).

As an initial matter, although the parties have spent a great deal of energy throughout this case debating the wisdom and effectiveness of face masks and policies requiring the use of face masks for mitigating the spread of COVID-19, this case does not actually involve resolution of those issues. "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). The single count of plaintiff's complaint was labeled "Declaratory Judgment and Permanent Injunction." However, "[c]ourts are not bound by a party's choice of labels because this would effectively elevate form over substance." *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 275–76; 951 NW2d 731 (2019) (quotation marks and citation omitted). Both declaratory relief and injunctive relief are remedies rather than stand-alone claims. *Wiggins v City of Burton*, 291 Mich App 532, 558-559, 561; 805 NW2d 517 (2011).

Plaintiff's complaint alleged that the Superintendent was without lawful authority to implement the subject mask policy without adoption by the School Board, that the mask policy was never an agenda item at a School Board meeting, that there was no public notice and comment provided regarding the mask policy, and that the School Board never voted on the mask policy. Plaintiff's complaint specifically alleged that "[t]he School Board effectively delegated its policymaking authority as a public body subject to the Open Meetings Act, MCL 15.261 et seq., and the Superintendent's deliberations and decision to adopt the Mandatory Mask Policy was made without a meeting open to the public in violation of the Open Meetings Act." Plaintiff sought to invalidate the mask policy and permanently enjoin the Superintendent and School District employees from enforcing or issuing further mask policies unless approved by the School Board. Plaintiff also sought exemplary damages, costs, and attorney fees.

"Under the OMA, public bodies must conduct their meetings, make all of their decisions, and conduct their deliberations (when a quorum is present) at meetings open to the public." *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 134-135; 860 NW2d 51 (2014), citing MCL 15.263. "Public body" is defined in relevant part to mean "any state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council, that is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function . . . ." MCL 15.262(a). "A general powers school district is a body corporate and shall be governed by a school board," and an "act of a school board is not valid unless approved, at a meeting of the school board, by a majority vote of the members lawfully serving on the board." MCL 380.11a(5). "The business that the board of a school district is authorized to perform shall be conducted at a public meeting of the board held in compliance with the open meetings act, 1976 PA 267, MCL 15.261 to 15.275." MCL 380.1201(1). The School Board is thus undisputedly a public body subject to the OMA.

"If a public body has failed to comply with the requirements of the act, in addition to authorizing enforcement actions by the attorney general or local prosecuting attorney, the OMA also allows for any person to commence a civil action." *Speicher*, 497 Mich at 135, citing MCL 15.270; MCL 15.271; and MCL 15.273. The OMA provides private litigants with a "three-tiered enforcement scheme." *Speicher*, 497 Mich at 135. Under the statutory enforcement scheme, a person may (1) file a civil action challenging the validity of the public body's decision made in violation of the act and seeking to invalidate the public body's decision based on the OMA

violations; (2) file a civil action to compel compliance or enjoin further noncompliance with the OMA if the public body is committing ongoing OMA violations, which if successful in obtaining injunctive relief, will entitle the plaintiff to attorney fees and costs; and (3) file a civil action seeking to hold a public official who intentionally violates the OMA personally liable for actual and exemplary damages not exceeding $500.00 total, as well as court costs and actual attorney fees. MCL 15.270; MCL 15.271; MCL 15.273; *Citizens For A Better Algonac Community Sch v Algonac Community Sch*, 317 Mich App 171, 178; 894 NW2d 645 (2016).

Reading the complaint in the instant case as a whole to determine the gravamen of plaintiff's claim, see *Adams*, 276 Mich App at 710-711, we observe that plaintiff included allegations that the mask policy was implemented in violation of the OMA and further allegations clearly demonstrating that he sought invalidation of the mask policy and an injunction prohibiting (1) enforcement of the policy, (2) adoption of such a policy through unilateral action by the Superintendent without the approval of the School Board, and (3) any further violation of the OMA. These claims mirror those statutory causes of action available under the OMA to invalidate a public body's decision made in violation of the OMA's requirements and to enjoin further ongoing OMA violations. See MCL 15.270; MCL 15.271.

Further, plaintiff's allegations that the Superintendent did not have lawful authority to issue the mask policy without adoption by the School Board and that the School Board could not effectively delegate such authority to allow the Superintendent to act unilaterally on this issue essentially amount to a claim that the requirements of the OMA could not be circumvented in accomplishing the desired end of instituting the subject mask policy. Although "an individual executive acting in his [or her] executive capacity is not a public body for the purposes of the OMA," *Herald Co v Bay City*, 463 Mich 111, 130; 614 NW2d 873 (2000), holding mod in part on other grounds by *Mich Federation of Teachers & Sch Related Pers, AFT, AFL-CIO v Univ of Mich*, 481 Mich 657 (2008), our Supreme Court has held that a public body may not attempt to "evade the OMA (and thus circumvent legislative intent) by delegating its authority" to entities or individuals that the public body "believed were not subject to the OMA, for the express purpose of avoiding the requirements of the OMA," *Herald*, 463 Mich at 134-135 (discussing the Supreme Court's holding in *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211; 507 NW2d 422 (1993)).

Here, on appeal, plaintiff explicitly states in his reply brief that "[i]njunctive relief is not at issue on appeal . . . ." Plaintiff has therefore waived and abandoned any claim under MCL 15.271 for an injunction based on alleged ongoing OMA violations. As this Court has explained,

> "[w]aiver is the intentional relinquishment of a known right. The usual manner of waiving a right is by acts which indicate an intention to relinquish it, or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive." A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error. [*The Cadle Co v City of Kentwood*, 285 Mich App 240, 254-255; 776 NW2d 145 (2009) (citation omitted; alteration in original).]

Next, although plaintiff also asserted that he was seeking exemplary damages, such damages are only available under the OMA in cases of intentional conduct by a member of a public

body. Under MCL 15.273(1), a "public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action." The elements of this claim are: "(1) the defendant is a member of a public body, (2) the defendant actually violated the OMA in some fashion, and (3) the defendant intended to violate the OMA." *People v Whitney*, 228 Mich App 230, 253; 578 NW2d 329 (1998). The Superintendent is not a member of the School Board and thus is not a member of a public body. See MCL 380.1229(1) (providing in relevant part that "the board of a school district . . . shall employ a superintendent of schools . . . . The superintendent shall not be a member of the board. . .").

In his complaint, plaintiff did not name any individuals other than the Superintendent and thus did not raise a proper claim under MCL 15.273(1) for an intentional violation of the OMA by a public official. *Whitney*, 228 Mich App at 253; see also *Ritchie v Coldwater Community Sch*, unpublished opinion of the United States District Court for the Western District of Michigan, issued July 11, 2012 (Case No. 1:11–CV–530), pp 37-38 (applying the elements stated in *Whitney* to a civil action under MCL 15.273(1) to conclude that dismissal of the claims against the defendant school superintendents was warranted).[2]

This leaves a potential claim under MCL 15.270 to invalidate a decision based on an alleged violation of the OMA.[3] Plaintiff's complaint clearly sought to invalidate the mask policy.

---

[2] In *Ritchie*, the court stated:

> Although *Whitney* involved the criminal provision of the OMA, both Section 12 and its civil counterpart, Section 13, use the same "public official" language. Moreover, the *Whitney* court's conclusion that a defendant must be "a member of a public" body is consistent with the purpose the OMA, which is to ensure public access to official decision-making of public bodies. In this regard, Section 11, M.C.L. § 15.271, authorizes a person to sue a public body for noncompliance, while Sections 12 and 13 authorize criminal and civil actions against the individual public body members for intentional violations. Accordingly, the Court concludes that Section 13, like Section 12, applies only to members of public bodies. [*Ritchie*, unpub op at 37-38.]

"[A]lthough this Court is not bound by a federal court decision construing Michigan law, it may follow the decision if the reasoning is persuasive." *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 5; 772 NW2d 827 (2009) (quotation marks and citation omitted).

[3] MCL 15.270 provides in relevant part as follows:

> (1) Decisions of a public body shall be presumed to have been adopted in compliance with the requirements of this act. The attorney general, the prosecuting attorney of the county in which the public body serves, or any person may commence a civil action in the circuit court to challenge the validity of a decision of a public body made in violation of this act.

Moreover, on appeal, plaintiff states his requested relief as follows: "The lower court's Opinion and Order should be reversed, and judgment should be entered in my favor declaring: (1) that the Policy is invalid; and (2) that the Superintendent does not have authority to issue District Covid policy, communicable disease policy, or any policy, specifically including but not limited to any mask mandates or quarantines of uninfected pupils."

To the extent plaintiff merely seeks a declaratory judgment, such relief is not available under the OMA. *Citizens For A Better Algonac Community Sch*, 317 Mich App at 179-180. However, this conclusion makes no difference to our analysis. Whether plaintiff's claim is understood as one for declaratory relief or to invalidate the mask policy, we would nonetheless reach the same determination based on the legal analysis set forth below that plaintiff did not establish a violation of the OMA.

MCL 380.11a generally outlines the power and governance structure applicable to the School District, stating in relevant part as follows:

> (3) A general powers school district has all of the rights, powers, and duties expressly stated in this act; may exercise a power implied or incident to a power expressly stated in this act; and, except as otherwise provided by law, may exercise a power incidental or appropriate to the performance of a function related to operation of a public school and the provision of public education services in the interests of public elementary and secondary education in the school district, including, but not limited to, all of the following:
>
> * * *
>
> (b) Providing for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity.
>
> * * *
>
> (5) A general powers school district is a body corporate and shall be governed by a school board. An act of a school board is not valid unless approved, at a meeting of the school board, by a majority vote of the members lawfully serving on the board.
>
> (6) The board of a general powers school district shall adopt bylaws. These bylaws may establish or change board procedures, the number of board officers,

---

(2) A decision made by a public body may be invalidated if the public body has not complied with the requirements of section 3(1), (2), and (3)1 in making the decision or if failure to give notice in accordance with section 5 has interfered with substantial compliance with section 3(1), (2), and (3) and the court finds that the noncompliance or failure has impaired the rights of the public under this act.

titles and duties of board officers, and any other matter related to effective and efficient functioning of the board. . . .

"The board of a school district shall be elected as provided under this act and the Michigan election law," MCL 380.11a(7), and "[m]embers of the board of a general powers school district shall be elected by the school electors for terms of 4 or 6 years, as provided by the school district's bylaws," MCL 380.11a(8). The board must employ a superintendent, who "shall not be a member of the board." MCL 380.1229(1).

Here, the School District bylaws provided in relevant part:

0132.1 - **SELECTION OF SUPERINTENDENT**

The Board of Education shall exercise its executive power in part by the appointment of a Superintendent who shall enforce the statutes of the State of Michigan, rules of the State Board of Education, and the policies of this Board.

0132.2 - **ADMINISTRATIVE GUIDELINES**

The Board shall delegate to the Superintendent the function of specifying required actions and designing the detailed arrangements under which the school will be operated. These detailed arrangements shall constitute the administrative guidelines governing the schools which are not inconsistent with statutes or regulations of the State Board or the policies of this Board.

A. Such administrative guidelines shall be binding on the employees and the students of this District when issued.

B. The Superintendent shall be delegated the authority to take necessary action in circumstances not provided for in Board policy, provided that such action shall be reported to the Board at the next meeting following such action.

The School District also had the following relevant policy in effect:

8450 - **CONTROL OF CASUAL-CONTACT COMMUNICABLE DISEASES**

The Board of Education recognizes that control of the spread of communicable disease spread through casual-contact is essential to the well-being of the school community and to the efficient District operation.

For purposes of this policy, "casual-contact communicable disease" shall include diphtheria, scarlet fever and other strep infections, whooping cough, mumps, measles, rubella, and others designated by the Michigan Department of Public Health.

In order to protect the health and safety of the students, District personnel, and the community at large, the Board shall follow all State statutes and Health Department regulations which pertain to immunization and other means for

-6-

controlling casual-contact communicable disease spread through normal interaction in the school setting.

If a student exhibits symptoms of a communicable disease, the principal will isolate the student in the building and contact the parents/guardians. Protocols established by the County Health Department shall be followed.

The Superintendent shall develop administrative guidelines for the control of communicable disease which shall include:

A. instruction of professional staff members in the detection of these common diseases and measures for their prevention and control;

B. removal of students from District property to the care of a responsible adult;

C. preparation of standards for the readmission of students who have recovered from casual-contact communicable diseases;

D. filing of reports as required by statute and the State Department of Health.

Furthermore, under Policy 1230, the Superintendent was authorized to "exercise authority to make administrative guidelines and procedures for district employees and students as may be necessary to effectively implement Board policy and the efficient operation of the District." Policy 1230.01 provided in relevant part:

The Board of Education delegates to the Superintendent the function of designing and implementing the guidelines, required actions, and detailed arrangements under which the District will operate. These administrative guidelines shall not be inconsistent with the policies adopted by the Board.

The Board itself will formulate and adopt administrative guidelines and rules only when required by law, and when the Superintendent recommends Board adoption.

The Superintendent may also issue such administrative and student handbooks as s/he may consider necessary for the effective administration of the schools and distribute them to employees and students and/or their parents.

As long as the provisions of these administrative guidelines and handbooks are not inconsistent with Board policies, or with Federal/State law, they will be considered to be an extension of the policy manual and binding upon all employees and students.

The language in Policy 8450 is broad enough to provide the Superintendent with the authority to act as she did in this instance to respond to the evolving circumstances of the pandemic. In doing so, she was acting in her individual executive capacity to implement policy and was not

subject to the OMA. *Herald*, 463 Mich at 130. The mask protocol is not inconsistent with the School Board policies. There is no language in Policy 8450 limiting the authority of the Superintendent to implement administrative guidelines regarding the spread of communicable diseases, contrary to plaintiff's narrow reading. Accordingly, whether characterized as a request for declaratory relief or to invalidate the mask policy, plaintiff has failed to demonstrate that the OMA was violated.

To the extent plaintiff raises other potential issues, plaintiff has not stated any of them in a sufficiently clear manner for us to be able to discern the precise legal basis on which he believes this Court could provide him any appellate relief. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted).

Affirmed. Defendants having prevailed are entitled to costs. MCR 7.219(A).

/s/ Sima G. Patel
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro